367 A.2d 213 (1976)
STATE of Maine
v.
Richard Wayne McLAIN.
Supreme Judicial Court of Maine.
December 17, 1976.
*215 Michael E. Povich, Dist. Atty., Howard M. Foley, Asst. Dist. Atty., Ellsworth, Sandra Hylander Collier, Student, for plaintiff.
Silsby & Silsby by Herbert T. Silsby, II, William S. Silsby, Jr., Ellsworth, for defendant.
Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.
*216 GODFREY, Justice.
After a jury trial, appellant was convicted on two separate charges of breaking, entering, and larceny in the daytime in violation of former 17 M.R.S.A. § 2103. He makes timely appeal from (1) the denial of his pretrial motion to suppress certain evidence as improperly seized, (2) the admission of certain photographic evidence during trial, and (3) the denial of his motions for acquittal and new trial on the ground of statements allowed in evidence. We deny the appeal.
The jury would have been warranted in finding that the facts of the case were as follows: On or about November 13-15, 1974, a summer residence in Blue Hill, Maine, was broken into. Stolen were some antiques, including, among other things, a desk, a musket, several oil paintings, and an antique harpsichord bearing the inscription "JOSEPH JOANNES COVCHET MEFECIT ANTVERPIAE 1679" in large letters over the keyboard.
On December 2, 1974, Inspectors Peterson and Jordan of the San Francisco Police Department visited appellant's home in California to investigate a report by a credible informant who claimed to have seen the stolen harpsichord in the dining room of that house. While still outside the house, the police were met and held at bay by a large guard dog. A resident of the house, one Mulldune, came out of the house, collared the dog, and accosted the visitors. They identified themselves as police inspectors, said they would like to talk to him, and asked him to remove the dog. Mulldune took the dog inside. While leading the dog back into the house with one hand, Mulldune held the outside door open behind him with the other in a manner which the inspectors interpreted as permission to enter the house. Once inside, the police eventually observed in plain view numerous antiques, including the harpsichord with the distinctive inscription. The police seized the instrument and several paintings as stolen property taken in the Blue Hill break.
After talking with appellant and the two other residents of the house about how they had come into possession of the property, the police decided not to make any arrests. Continuing their investigation, the police learned two days later that other antiques appellant had recently delivered to a San Rafael auction gallery were also stolen from Blue Hill. Shortly thereafter, appellant was arrested.

I
Appellant appeals first from the denial of his pretrial motion to suppress evidence of the property seized in his California home on December 2, 1974, and of property seized at the auction gallery on December 4, 1974. The two seizures must be considered separately.
Appellant argues that the warrantless seizure of the harpsichord and paintings in his home was unlawful under the Fourth and Fourteenth Amendments and that the evidence derived from the seizure must be excluded. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
The Fourth and Fourteenth Amendments guarantee that a citizen's home will be free from arbitrary intrusion by the police. Therefore, the entry into appellant's home without a warrant was unreasonable in itself unless justified under one of a few exceptions to the requirement of a warrant issued by a disinterested magistrate on a showing of probable cause. An established exception to the warrant requirement is a search conducted pursuant to a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L. Ed.2d 854 (1973). For valid consent to exist there must be some objective manifestation of consent given. It can be given by words or by gesture. Robbins v. MacKenzie, 364 F.2d 45 (1st Cir. 1966). Consent must be freely and voluntarily *217 given and cannot be achieved by implied threat or covert force. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Finally, the person giving consent must bear an appropriate relationship to the property to be searched. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
Whether valid consent was given is a question of fact to be determined from all the circumstances existing at the time of the search. Schneckloth, supra. The State has the burden of proving by a preponderance of the evidence that consent existed. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); State v. Koucoules, 343 A.2d 860 (Me.1974).
Inspector Peterson testified that before entering appellant's home the police identified themselves and the general nature of their visit to Mulldune, the resident of the house who had come outside to collar the guard dog. Explaining how the police got inside the house, Peterson testified as follows:
"A He walked in front of us with the dog.
Q Did he open the door to the house?
A Yes he did.
Q Did he hold it open for you people?
A He opened up the door to the residence. And as he . . . he turned towards us and looked at us, I believe, keeping his hand on the door, indicatting that he was allowing the door to remain open while we entered behind him . . .."
Standing in the entrance hallway of the house, the police could see part of the dining room. They saw a large and apparently antique object sitting in one corner of the room. Pointing to the object, which was in fact an antique desk, Peterson asked Mulldune if it was the harpsichord which the police had said they were looking for. Mulldune's response was, "No, that's not it, it's around the corner." As he spoke, Mulldune made a pointing, circling gesture with his hands indicating that the harpsichord was around a corner of the dining room which the police could not see from the hallway. The police told Mulldune that they would like to examine the harpsichord. Mulldune again gestured toward the dining room with upturned palm and pointing index finger. Later testifying that he could only interpret such a gesture as permission to enter the dining room, Peterson and his partner entered. There they observed a harpsichord bearing the inscription "JOSEPH JOANNES COVCHET MEFECIT ANTVERPIAE 1679" in large letters over the keyboard.
While the police were examining the harpsichord in the dining room, the door to an adjacent bedroom was opened by Mrs. Soucy, another resident of the house. Behind her, and in plain view, were four paintings which appeared to be old. Nearby was an antique musket. After identifying themselves, the police asked Mrs. Soucy where the paintings had come from. She told them that appellant had brought them and the harpsichord to California from Maine a week earlier. Later that day, believing the harpsichord and paintings to be fruits of the Blue Hill larceny, the police had the property taken downtown and impounded for positive identification.
The trial judge, the finder of fact at the suppression hearing, found that entry into McLain's home was made pursuant to the voluntary consent of Mr. Mulldune. Mulldune's apparently helpful attitude toward the police and his gestures support this conclusion. The findings of a single justice in cases such as this will not be set aside unless clearly erroneous. State v. MacKenzie, 161 Me. 123, 210 A.2d 24 (1965). While the testimony of Peterson was controverted in some particulars by Mulldune, we must give due regard to the opportunity of the trial court to judge *218 the credibility of witnesses. There being sufficient evidence in the record to support a finding, by a fair preponderance of the evidence, that consent to enter the premises was freely given, we cannot hold that the conclusion reached by the presiding justice was clearly erroneous.
Mulldune bore an appropriate relationship to the property to consent effectively to an entry by the police. While the house in question was rented in the name of appellant McLain, Mulldune had lived there for seven or eight months. He had full use of the house, and he and McLain conducted business from the premises. Those factors gave Mulldune sufficient control over the house to give consent in his own right to the entry of the police. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Thibodeau, 317 A.2d 172 (Me.1974).
Having determined that the police were authorized to be where they were, namely, in McLain's home and, more specifically, in his dining room, we conclude that the harpsichord and the paintings which were seen in plain view were subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. Cowperthwaite, 354 A.2d 173 (Me.1976).
Even when there has been a lawful search or when no search has been necessary, the accompanying seizure must be based on reasonable grounds to believe that the property falls within a category of goods warranting seizure. See Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967). The inscription on the antique harpsichord made it a highly unusual piece. The presence of this instrument and the four antique paintings in close proximity, coupled with Mrs. Soucy's statement that all the items had just been brought back from Maine, afforded reasonable and adequate grounds for their seizure as stolen goods and as evidence to be used in any future prosecution. Warden, Maryland Penitentiary v. Hayden, supra.
The seizure of the musket and desk at the San Rafael auction gallery was also proper. While appellant apparently does not object to the entry of the police upon the gallery premises, he does object to the seizure on the grounds that the desk and musket were not sufficiently distinguishable from other property to permit a reasonable belief that they were the items stolen from Blue Hill.
Just before the seizure, Inspector Peterson telephoned a Mrs. Chamberlain, daughter of the Blue Hill larceny victim, from the San Rafael art gallery. Mrs. Chamberlain, who had spent numerous summers at the Blue Hill residence, had gone there shortly after the larceny and had had occasion to observe which items were missing. From the gallery, the inspector described to Mrs. Chamberlain some of the property before him. One item described was a handcarved desk with a carving of a lion on it. On the legs of the desk were carvings of birds with grapes in their beaks. Mrs. Chamberlain thought she recognized this as one of the items stolen from her mother's home. To be absolutely sure, however, she told the police that she knew of a secret compartment in the desk and that if they followed her instructions, the compartment would open. Following these coast-to-coast instructions, the police opened certain drawers, pulled a particular knob, and a secret compartment sprang open. At that point the police had reasonable and adequate grounds to believe that the desk was stolen from Blue Hill.
Mrs. Chamberlain's identification of the musket was less dramatic. She knew only that an "old Springfield musket" was missing. The gun described over the phone by Peterson was a wooden-handled, percussion-type musket bearing the words "Springfield 1847" on the side. On the barrel were the initials "A R-1". These features were identical to those of the musket *219 found next to the stolen paintings in appellant's home two days earlier. Mrs. Chamberlain's description of the gun as an "old Springfield musket", coupled with the fact that it had previously been seen near the stolen paintings and had later been found with the stolen desk, provided reasonable grounds to believe that it, too, was fruit of the Blue Hill theft and therefore properly seizable. State v. Mosher, 270 A.2d 451 (Me.1970).

II
Appellant's second argument on appeal is that it was error to permit the state to admit into evidence photographs of the stolen property rather than the property itself. He contends that this alleged error deprived him of an opportunity to conduct adequate cross-examination.
Two witnesses at trial testified that the antiques seized by the police in San Francisco were the property stolen from the summer home in Blue Hill. Before trial, both witnesses had gone to California to make positive, in-person identifications of the property. At trial they testified that the photographs introduced by the state were fair and reasonable representations of the objects that they had identified in California. The photographs were introduced merely to illustrate the direct testimony of the witnesses and were not used as the actual means of identification.
If the essential elements of a crime are established by testimonial evidence of sufficient force, physical evidence is not a prerequisite for conviction. State v. Creamer, 359 A.2d 603 (Me.1976). In this case, the stolen property was identified by two corroborating witnesses who were familiar with the property and who had gone to California to make positive identifications. Their testimony was of sufficient force to identify the property without physically introducing it into evidence. While those witnesses were on the stand, their intelligence, acuity, and credibility were open to attack through appellant's questioning. Appellant was not denied an opportunity to conduct adequate cross-examination.

III
Appellant challenges the admissibility of certain statements he made to the police during the course of their investigation.
On December 2, 1974, the police had reasonable grounds to believe that appellant had certain stolen property in his possession. However, the police did not know how appellant had come into possession or who the thief was. Talking to the police in his own home on the night of December 2, McLain admitted having been in Bangor, Maine, in mid-November, the time of the theft, and of taking the antiques to California. However, he explained that he periodically returned to Maine, his birthplace, to visit friends, go hunting, and buy antiques for resale, and he gave a reasonably convincing account of how he had purchased the antiques in question from a man named Joseph McGinnis whom he said he met while hunting in Dedham, Maine. Appellant said that McGinnis, claiming to have inherited the antiques, had sold them to appellant for $1,000. In some detail, appellant described McGinnis, the kind of car he drove, and the location of the house in Machias where the property had been stored. Appellant had not asked for any bill of sale, he said, and none had been given.
Giving some credence to this story because of its plausibility and detail and because of appellant's apparently cooperative attitude, the San Francisco police relayed this information to Officer Maddocks at the sheriff's office in Hancock County, Maine, who attempted to locate McGinnis and the house in Machias. Unable to do so, he telephoned San Francisco the next day to see if the police there could get better directions to the house in Machias.
*220 The San Francisco inspectors therefore revisited appellant's home at seven o'clock in the evening of December 3, 1974. At first reluctant to talk because of illness, appellant again recounted his story about buying the antiques from McGinnis. During neither of their two visits, did the police give Miranda warnings to appellant.
Over defense objections at trial, Inspector Peterson testified as to appellant's explanation of his possession of the stolen property. No doubt highly probative to the jury were appellant's admissions that he had been in Maine at the time of the theft, that he had acquired possession of the property in Maine, and that he had personally transported it back to California. Appellant argues that these admissions were acquired in violation of his Miranda rights and therefore inadmissible.
In Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a criminal defendant must be informed of his right to remain silent and his right to counsel before being subjected to questioning pursuant to a custodial interrogation. Otherwise any statements made by the defendant are inadmissible. A custodial interrogation occurs whenever a defendant has been taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning. Whether police conduct amounts to a significant deprivation of freedom depends on the many circumstances then existing. United States v. Hall, 421 F.2d 540 (2d Cir. 1969). As we observed in State v. Inman, 350 A.2d 582, 597 (Me.1976), the court must examine the facts of each particular case to determine whether the line between general investigation and custodial interrogation has been crossed.
In this case appellant was questioned in his own home, at a reasonable hour, and in the presence of his friends, Mr. Mulldune and Mrs. Soucy. He was free to move about the house and no physical or other restraints were placed upon him by the police. The purpose of the investigation was to identify and locate Mr. McGinnis, not to inculpate appellant. Any suspicions aroused by the discovery of stolen property in his home were apparently allayed by his convincing explanation and cooperative manner. Inspector Peterson testified that appellant did not become a suspect until a day after the last conversation, when it was learned that certain antiques which appellant had removed from his home to the auction gallery soon after the first visit were also stolen from Blue Hill.
We conclude that at the two times appellant spoke to the police, the police were still conducting a general investigation and that appellant's statements were not made in the course of a custodial interrogation. Moreover, we find nothing in the record to indicate that his statements were the product of coercion or duress. The presiding justice's finding that the statements were voluntary beyond a reasonable doubt is supported by the evidence. Because there was no custodial interrogation requiring a Miranda warning and because the statements were voluntarily made, they were properly admitted in evidence.
At trial, Officer Maddocks testified that as a result of instructions given to him over the telephone by Inspector Peterson he made a search of Machias for a Mr. McGinnis. Appellant objected to this testimony on the ground that it was hearsay. His objection having been overruled, he now raises this as error on appeal.
In the case before us Maddocks did not relate the content of statements made by any other declarants. Specifically, he did not say what the inspector or appellant had said. He merely stated that after receiving certain instructions he acted in a particular manner. This was not hearsay and therefore not inadmissible on that ground.

*221 IV
Appellant's final contention is that it was error to deny his motions for acquittal and a new trial.
In establishing appellant's guilt the state relied in part on the principle that exclusive possession of stolen property, soon after the occurrence of the theft, may permit an inference by the jury that the person in possession is the thief. State v. James, 312 A.2d 531 (Me.1973). Appellant urges that his possession of stolen goods two and one-half weeks after the break was too remote in time to be considered "recent" possession. Therefore, in his view, the inference of his guilt from possession was impermissible as a matter of law.
We pointed out in James that the amount of time elapsing after a larcenous act does not in itself determine whether possession is sufficiently recent to bring the inference into operation. Other factors to be considered, in addition to the passage of time, are the kind of stolen property involved, the amount and volume thereof, and the ease or difficulty with which it can pass into legitimate channels of trade. State v. James, supra, at 534. See also Aron v. United States, 382 F.2d 965, 971 (8th Cir. 1967).
Appellant was found in possession of at least seven antiques all stolen from the same premises in Maine. Two of the items in particular, the desk and the harpsichord, were bulky, distinctive, and valuable. The harpsichord alone was said by one expert to be worth as much as fifty thousand dollars. Its size, value, and antiquity made it difficult to dispose of into legitimate trade channels. It could be reasonably inferred that the person in possession of such an item, only two and a half weeks after its theft, was the thief. That inference gains additional support from the fact that several distinctive items that had been stolenthe unusual desk, musket, paintings, and harpsichordwere still together in appellant's possession.
When appellant testified at trial he again admitted having been in Bangor, Maine, at the time of the break and of having the goods in his exclusive possession not more than five days after the theft. His testimony, if believed, made his possession of stolen goods much more recent than two and one-half weeks.
A jury may properly find a defendant guilty of breaking, entering and larceny "in reliance on the inference of fact arising from recent and exclusive possession of stolen goods alone, if as fact-finders, they conclude on all the evidence such inference is valid and if the inference convinces them of guilt beyond a reasonable doubt and not otherwise." State v. Poulin, 277 A.2d 493, 500 (Me.1971).
In the instant case the jury could have found that appellant was in the general vicinity of the crime at the time it occurred and that he was in exclusive possession of the stolen property shortly thereafter. They could have found incredible his testimony that he bought a fifty-thousand-dollar harpsichord and other valuable antiques for a thousand dollars, with no bill of sale, from a stranger he met in the woods. Their finding of guilt beyond a reasonable doubt was supported by the evidence and by permissible inferences that could have been validly derived from that evidence. It was not error to deny appellant's motions for acquittal and a new trial.
The entry will be:
Appeal denied.
All Justices concurring.