STATE of Maine

v.

**Bradford L. CRANEY.**

Supreme Judicial Court of Maine.

Jan. 5, 1978.

Thomas E. Delahanty, II, Dist. Atty., David M. Sanders, Linda Sibery Crawford (orally), Asst. Dist. Attys., Farmington, for plaintiff.

Ronald J. Cullenberg (orally), Farmington, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The defendant, Bradford L. Craney, was found guilty by a Franklin County jury on an indictment charging him with one count of theft by unauthorized taking of a Volkswagen (VW) van and two counts of unauthorized use of two pickup trucks, in violation of 17–A M.R.S.A. §§ 353 and 360, respectively. He appeals from the judgments entered upon the jury verdict,[1] alleging er-

---

1. Craney was sentenced to Maine Correctional Center for the following terms: for Count One, 2½ years; for Count Two, 9 months, to be served concurrently with Count One; and

ror in several evidentiary rulings by the presiding justice.

We deny the defendant's appeal.[2]

The principal issue raised by the defendant's appeal relates only to his conviction for theft of the VW van. That issue is whether the presiding justice erred (1) in admitting in evidence an officer's testimony that the police had found the stolen van near the defendant's residence and (2) in admitting as exhibits a jacket, blanket, and pair of trousers (later linked to the defendant or his girl friend) found in the van. The State previously had tried to introduce testimony of the defendant's statements and conduct which had led the police to the VW van, but upon the defendant's timely objection and after voir dire of an officer present at the scene, the presiding justice excluded that testimony on the ground that required *Miranda* warnings had not been given.[3] The defendant on appeal contends that the admitted evidence also should have been excluded as "fruit of the poisonous tree." *Cf. Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (exclusion of confession and narcotics obtained as a result of primary Fourth Amendment violation).

Assuming, without deciding, that the *Wong Sun* exclusionary rule applies to *Miranda* violations, we nonetheless reject the defendant's contention. Our examination of the facts in the present case shows no primary violation of the *Miranda* rule. The presiding justice was unnecessarily restrictive in his interpretation of what constitutes the "custodial interrogation" that would trigger the requirement of *Miranda*

warnings. In reviewing the voir dire evidence, we must accord special respect to the opportunity had by the presiding justice, but denied to us, of appraising the credibility of the live testimony he heard. Even so, viewing all of the evidence in support of "custodial interrogation" in the light most favorable to the defendant, we must conclude as a matter of law that the *Miranda* warnings were not required.[4] In short, there was here no "poisonous tree" from which "fruit of the poisonous tree" could grow.

Only one witness, Wilton Police Officer Norton, testified on voir dire. He reported the following happenings at or near the Craney premises in Wilton in the late afternoon of October 8, 1976. Soon after going on duty at 4 p. m., the officer, at the call of his chief, Leon White, drove in his police cruiser to the house where the 24-year-old defendant lived with his parents. There Officer Norton found Chief White standing at the foot of a tree engaged in conversation with the defendant, who with his girl friend was occupying a tree house overhead. Upon arrival, Norton was told by Chief White that he "had reason to believe that Mr. Craney was involved in a vehicle that was stolen out of Jay." In the witness's immediate presence, the conversation between Chief White and the defendant continued for a few minutes. The police chief, who was questioning Craney about the VW van that had disappeared in Jay, spoke in a "calm, cool, normal state of voice." Officer Norton heard no threats or promises. After a time, the defendant climbed down from the tree house and offered to make some phone calls to inquire about the VW

---

Count Three, 9 months to be served concurrently with Count One and consecutive to Count Two.

**2.** Pursuant to 15 M.R.S.A. § 2115–A(2) (enacted 1968) (1975 Supp.), the State has cross-appealed. In view of our denial of the defendant's appeal, we do not reach the cross-appeal.

**3.** The presiding justice admitted evidence of the van's discovery by the police, and of its

location and contents, on the basis that an object as large and conspicuous as a VW van would have been discovered shortly regardless of Craney's cooperation.

**4.** While we hold that the presiding justice erred in finding the *Miranda* warnings to be required, we can understand his "leaning over backward" in an attempt to make an error-free record, in the face of the prosecution's tendency (evident in this trial record) to overprove its case.

van. He led the officers[5] into the Craney residence where, leaving them in the kitchen, he went alone into the adjoining living room to make one or more telephone calls. Some five to ten minutes later, he emerged and told the officers that he knew where the VW van was and that he would lead them to it. Craney rode with Chief White a short distance in his police cruiser, followed by the other officers in theirs; and after Craney directed them to park beside the public highway, he took them down a woods road to the rear of the Craney place. There they found the VW van. In the process of showing them the van, Craney told Officer Norton that "if they tried to pin the rap on him [that] he would divulge the name of the person who told him where the vehicle was." No *Miranda* warnings were given Craney at any time on that day. Discovery of the van, subsequently identified as the stolen one, and discovery in the van of a blanket and wearing apparel that were later shown to have been used or worn by the defendant or his girl friend, led in time to the defendant's arrest, indictment, and conviction for theft.

◾ The preceding paragraph summarizes all the facts before the presiding justice on voir dire. Believing that evidence brought the *Miranda* rule into play, the justice excluded any statements made by the defendant, as well as any testimony that Craney had led the police to the van and had been present at the site when it was found. The facts brought out on voir dire, however, simply do not add up to "custodial interrogation." Thus, the failure to give the *Miranda* warnings did nothing to render inadmissible either testimony of the defendant's statements and conduct or other evidence which was the "fruit" of those statements and conduct.

◾ A "custodial interrogation" occurs only when

"a defendant has been taken into custody or otherwise deprived of his freedom . . . in any significant way and is

subjected to questioning." *State v. McLain*, Me., 367 A.2d 213, 220 (1976). As we went on to say in *McLain* :

"Whether police conduct amounts to a significant deprivation of freedom depends on the many circumstances then existing. *United States v. Hall*, 421 F.2d 540 (2d Cir. 1969). As we observed in *State v. Inman*, 350 A.2d 582, 597 (Me. 1976), the court must examine the facts of each particular case to determine whether the line between general investigation and custodial interrogation has been crossed." *Ibid.*

◾ In the case at bar, at no time during the questioning did the officers arrest the defendant or attempt to exercise physical control over his movements. The questioning itself took place entirely in broad daylight, on Craney property, in and around the defendant's residence. There was here no evidence that Craney's actions in descending from the tree house and leading the officers into the kitchen of his nearby residence were prompted by threat or promise. Once inside, Craney freely left the officers and went unaccompanied to a separate room where he remained for five or ten minutes, making one or more private telephone calls. When he emerged, he willingly took the officers to the van on his own initiative. Although we recognize that the officers, by their presence and number, may to a degree have influenced the defendant's cooperation, which ultimately led to evidence supporting his conviction,

"any such psychological pressure emanating from an officer's authority alone is not sufficient under *Miranda* to create the 'inherently coercive' environment requiring the several warnings which the *Miranda* case has established as necessary for the protection of the constitutional privilege against self-incrimination." *State v. Lewis*, Me., 373 A.2d 603, 608 (1977).

There was no error in the presiding justice's admission of evidence supporting the defendant's conviction on the first count,

---

5. Police Chief Harris of Jay apparently had joined Officer Norton and Chief White on the Craney premises at some point during this time.

that for theft of the VW van; and indeed, cumulative evidence against the defendant on that count was erroneously kept from the jury. The defendant takes nothing on this first and principal point of his appeal. *Cf. Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. McLain, supra.*

■ With respect to his convictions for unauthorized use of the pickup trucks, we have examined the defendant's evidentiary objections and find them completely devoid of merit. The disputed evidence, introduced for the purpose of identifying the two pickups, was merely cumulative, since the owners of both had previously testified to their ownership and to absence of authorization. Rule 52(a), M.R.Crim.P.

The entry must be:

Appeal denied.

Judgments affirmed.

WERNICK and DELAHANTY, JJ., did not sit.

POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ. concurring.