**Affirmed and Majority and Dissenting Opinions filed August 27, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00606-CR

**SUZANNE ELIZABETH WEXLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1513928**

## DISSENTING OPINION

The majority erroneously concludes Appellant was not in custody at the time of her inculpatory and custodial interrogation. Appellant complied with police instructions (conveyed via loudspeaker from an armored police vehicle by High Risk Operations Unit personnel), exited the residence in which she was previously located as an armed SWAT team prepared to enter and conduct a safety sweep, was placed in a police car, was informed a search of the home from which she just exited would be performed, was informed the drugs secreted therein would be

found, was asked where said drugs would be found (an inherently inculpatory question under the circumstances), and was never informed she was free to leave. Under these facts, "a reasonable person [would] believe that [s]he is under restraint to the degree associated with an arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). Because Appellant's statement to the officer during this questioning was the only evidence that directly linked her to the drugs for which she was prosecuted, I dissent.

## GOVERNING LAW

"'Custodial interrogation' is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985) (citing *Orozco v. Tex.*, 394 U.S. 324 (1969); *Mathis v. United States*, 391 U.S. 1 (1968); and *Miranda v. Ariz.*, 384 U.S. 436 (1966)). *See also Miranda,* 384 U.S. at 444 ("By custodial interrogation, [the United States Supreme Court] mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."). *Miranda* is a promise from the judiciary to the People; the majority breaks this promise by unreasonably concluding the instant facts do not constitute "custody" as a matter of newly-created Texas law without citation to any precedent which requires said conclusion.

"A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt,* 931 S.W.2d at 254; *see also Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). Texas law is clear that:

2

[A]t least four general situations . . . may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt,* 931 S.W.2d at 255 (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)); *see also id.* ("[C]ustody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.").

## ANALYSIS

The instant facts facially trigger at least the first and third variants in *Dowthitt*, the legal precedents sustaining same are readily ascertainable, and there is no compelling reason to ignore any (much less all) of them; as a result, I reject the majority's conclusion that Appellant was not in custody at the time of her inculpatory statements.

Once a focused[1] suspect is placed in a police vehicle under analogous circumstances, commonsense dictates that the suspect's "freedom of action" has

---

[1] *See Miranda,* 384 U.S. at 444 & n.4. *See also Shiflet*, 732 S.W.2d at 624 (citing *Escobedo v. Ill.*, 378 U.S. 478 (1964)) and *Ancira v. State*, 516 S.W.2d 924, 927 (Tex. Crim. App. 1974) ("The obvious purpose of the agents interrogating him was to elicit an incriminating statement for 'the investigation was no longer a general inquiry into an unsolved crime' but had begun 'to focus on a particular suspect'[.]"); *accord State v. Preston*, 411 A.2d 402, 405 (Me. 1980) ("The more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers *Miranda* . . . .") (citing *U.S. v. Hall*, 421 F.2d 540, 545 (2d Cir. 1969) and Yale Kamisar, *"Custodial Interrogation" Within the Meaning of Miranda*, in Criminal Law and the Constitution, 335-85, Ann Arbor, Mich.: Institute of Continuing Legal Education, 1968).

been significantly impacted. *See Miranda*, 384 U.S. at 444. Most directly, such persons (as opposed to those who voluntarily enter such vehicles) are no longer free to be in the physical place where they were located before being placed in a police vehicle by a police officer;[2] while certain interactions in more public spaces would foreseeably yield less significant deprivations, Appellant left the protections of a private home only after being instructed by an organized and well-equipped amassment of law enforcement personnel. Appellant's placement in a police vehicle significantly impacted her "freedom of action" and constituted custody. *See U.S. v. Blum*, 614 F.2d 537, 540 (6th Cir. 1980) (defendant's placement in a police vehicle with a uniformed officer constituted a restriction on his freedom sufficient to constitute custody).

Comparable physical deprivations of *drivers'* freedoms have historically constituted custody in Texas even when there was no warrant. *See Ragan v. State*, 642 S.W.2d 489 (Tex. Crim. App. 1982) (citing *Gonzales v. State*, 581 S.W.2d 690

---

[2] These facts are readily distinguished from non-custodial cases where people who have reason to believe officers suspect they committed a crime voluntarily accompany police officers investigating criminal activity to a certain location. *See Shiflet*, 732 S.W.2d at 630 (citing *Ruth v. State*, 645 S.W.2d 432 (Tex. Crim. App. 1979); *McCrory v. State*, 643 S.W.2d 725 (Tex. Crim. App. 1982); *Ragan v. State*, 642 S.W.2d 489 (Tex. Crim. App. 1982); *Stewart v. State*, 587 S.W.2d 148 (Tex. Crim. App. 1979); *Stone v. State*, 583 S.W.2d 410 (Tex. Crim. App. 1979); *Gonzales v. State*, 581 S.W.2d 690 (Tex. Crim. App. 1979); *Brooks v. State*, 580 S.W.2d 825 (Tex. Crim. App. 1979); *Scott v. State*, 571 S.W.2d 893 (Tex. Crim. App. 1978); *Newberry v. State*, 552 S.W.2d 457 (Tex. Crim. App. 1977); *Lovel v. State*, 538 S.W.2d 630 (Tex. Crim. App. 1976); *Allen v. State*, 536 S.W.2d 364 (Tex. Crim. App. 1976); *Bailey v. State*, 532 S.W.2d 316 (Tex. Crim. App. 1975); *Adami v. State*, 524 S.W.2d 693 (Tex. Crim. App. 1975); *Ancira*, 516 S.W.2d at 924; *Graham v. State*, 486 S.W.2d 92 (Tex. Crim. App. 1972); *Evans v. State*, 480 S.W.2d 387 (Tex. Crim. App. 1972); *Brown v. State*, 475 S.W.2d 938 (Tex. Crim. App. 1971); *Higgins v. State*, 473 S.W.2d 493 (Tex. Crim. App. 1971); *Calhoun v. State*, 466 S.W.2d 304 (Tex. Crim. App. 1971); *Tilley v. State*, 462 S.W.2d 594 (Tex. Crim. App. 1971); *Hoover v. State*, 449 S.W.2d 60 (Tex. Crim. App. 1969); and *Bell v. State*, 442 S.W.2d 716 (Tex. Crim. App. 1969)).

(Tex. Crim. App. 1979) (vehicle was weaving; driver was stopped for possible DWI and asked to sit in patrol car while his license was checked; he was not free to go; he was asked if he had been in trouble before); *Scott v. State*, 564 S.W.2d 759 (Tex. Crim. App. 1978) (driver stopped for routine license check, arrested for outstanding traffic warrant, and placed in patrol car; when pistol was found in his car, driver was asked to whom it belonged); *Newberry v. State*, 552 S.W.2d 457 (Tex. Crim. App. 1977) (driver was stopped for several traffic violations, and had difficulty getting out of his car and finding his license; he was asked if he had been drinking, what he had been drinking, how much he had been drinking, and what he had been doing; he was then "placed under arrest," although he had not been free to go since he was stopped); and *Harper v. State*, 533 S.W.2d 776 (Tex. Crim. App. 1976) (driver stopped for making a sudden turn while approaching a license check point; registration records did not match the make of car being driven; driver was asked to whom the car belonged)). Here, Appellant had just exited a private home after being instructed to do so from an armored police vehicle, there was a presumably valid search warrant for said home, she was placed in a police car, and *then* she was informed police would find the secreted drugs about which a police officer was asking while she was in the back seat of a police car in the midst of an organized police operation. I simply cannot agree with the majority's implicit finding that Appellant's freedom of action was not significantly impacted or that she (and all similarly situated persons) are not entitled to constitutional protections under comparable facts.

Additionally, these facts demonstrate law enforcement "create[d] a situation that would lead a reasonable person to believe that his [or her] freedom of movement ha[d] been significantly restricted[.]" *Dowthitt,* 931 S.W.2d at 255. "It is inconceivable that a person in such a situation could have reasonably concluded

5

that he or she was free just to walk away." *State v. Pies*, 748 N.E.2d 146, 151 (Ohio Ct. App. 2000); *see also State v. Snell*, 166 P.3d 1106, 1110 (N.M. Ct. App. 2007) (questioning after placement in back of police car with doors locked constituted custodial interrogation), *cert. denied*, 129 S. Ct. 626 (2008); *State v. Malik*, 552 N.W.2d 730, 731 (Minn. 1996) (questioning after placement in a police car was custodial where (1) police had knowledge of inculpatory acts, (2) police were going to conduct a search, and (3) no one informed defendant he was free to leave); *State v. Wash.*, 402 S.E.2d 851, 853 (N.C. Ct. App. 1991), *rev'd*, 410 S.E.2d 55, 56 (N.C. 1991) (per curiam) (Greene, J. dissenting) (defendant was in custody when he was placed in the back of a police car with handles that did not work and his movement was restricted); *State v. Preston*, 411 A.2d 402, 405 (Me. 1980) (questioning defendant alone in a police car "increased the coercive nature of the interrogation"); *Commonwealth v. Palm*, 462 A.2d 243, 246 (Pa. 1983) (interrogation in front seat of Game Protector's vehicle was a custodial investigation); and *People v. Sanchez*, 280 A.D.2d 891 (N.Y. App. Div. 2001) (reasonable people placed in a police car "would have believed that he [or she] was in custody") (citing *People v. Yukl*, 256 N.E.2d 172 (N.Y. 1969), *cert. denied,* 400 U.S. 851 (1970)). While there is no inherent wrongdoing associated with police creating a situation where reasonable people believe they are incapable of leaving, the majority ignores the impropriety of making inculpatory interrogatories after creating such a scenario without first providing the People with *Miranda* warnings.

In an era where the ubiquity of recording devices makes the People increasingly aware that some alleged suspects are (*inter alia*) beaten, choked, and executed for markedly less, the majority's conclusion that Appellant was free to simply walk away defies reason. Indeed, many people who have such unfortunate interactions with law enforcement do not have the forewarning typically associated

with (1) first being placed in a police vehicle, (2) a judicially-approved warrant, (3) an armored police vehicle, (4) a well-armed SWAT team preparing to conduct a protective sweep of the house from which they just exited under police instruction, (5) traffic being re-routed away the block, *and then* (before, during, or after accusatory questioning based on an officer's personal and well-informed suspicions of guilt) (6) unilaterally departing from police vehicles without express permission to do so. *Cf. Dewey v. State*, 629 S.W.2d 885, 886 (Tex. App.—Ft. Worth 1982, pet. ref'd) (appellant was not in custody where he exited the police car during a conversation with officers, walked to his car, retrieved a beer, and returned to the officers' car).

The officers here were not conducting a general investigation; instead, they specifically targeted a specific house, acquired a warrant therefor, and then focused on (then detained) Appellant when she compliantly egressed therefrom. *See Ancira*, 516 S.W.2d at 926 ("The questioning of appellant by the officer in the police vehicle cannot be characterized as a general investigation into an unsolved crime, nor was the questioning made under circumstances to bring it within the ambit of general on-the-scene investigatory process."). Additionally, the presence of multiple police cars adds (at least marginally) to the question whether Appellant was in custody for *Miranda* purposes. *See State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012). Finally, the implicit threat that Appellant would (at least) be forcibly seized if she did not voluntarily leave the house (then submit to a detained interrogation) expressly contravenes the majority's conclusion that she was not in custody. *Martinez v. State*, 337 S.W.3d 446, 455 (Tex. App.—Eastland 2011, pet. ref'd) ("When the circumstances show that the individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody at the time.") (citing *Dancy v.*

7

*State*, 728 S.W.2d 772, 778-79 (Tex. Crim. App. 1987)); *see also Miller v. State*, 196 S.W.3d 256, 264 (Tex. App.—Ft. Worth 2006, pet. ref'd) (citing *Anderson v. State*, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996), *cert. denied*, 521 U.S. 1122 (1997) and *Sander v. Tex.*, 52 S.W.3d 909, 915 (Tex. App.—Beaumont 2001, pet. ref'd) (citing *Anderson* and *Dowhitt*)).

As a result, Appellant was in custody within the meaning of the United States Constitution and she was entitled to *Miranda* warnings as a matter of clearly established and heretofore unbroken law. The trial court erred in admitting her statement.

Finally, the inclusion of Appellant's statement at trial was the *only* evidence the State presented to connect her to the drugs and the State relied heavily on Appellant's statement in its closing argument. Even the State's witness who was responsible for collecting and logging the evidence at the scene testified he did not know of anything connecting that evidence to Appellant. Jimmy Sherlock testified on Appellant's behalf that Appellant had been living with him for months prior to the search at issue. Other than her statement to the officer while in custody on the scene, there was no evidence in the record connecting Appellant to the drugs found at the home. Therefore, the admission of the statement was harmful to Appellant.

For the foregoing reasons, I would reverse and remand to the trial court for a new trial without the statement obtained while Appellant was in custody, and therefore I dissent.

/s/  Meagan Hassan
     Justice

Panel consists of Justices Wise, Zimmerer, and Hassan (Zimmerer, J., majority).