**STATE of Maine**

**v.**

**Edward L. FITZHERBERT.**

Supreme Judicial Court of Maine.

Aug. 2, 1976.

Charles K. Leadbetter, Asst. Atty. Gen., Joseph M. Jabar, Dist. Atty., Augusta, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On April 15, 1975 a Superior Court jury (Kennebec County) found defendant Edward L. Fitzherbert guilty of having committed the crime of "breaking, entering and larceny" in violation of 17 M.R.S.A. § 2103.[1]

The indictment, returned on October 2, 1974, alleged in respects here relevant that defendant

". . . on or about the second day of May A.D. 1974, at Rome, . . . Maine, in the day time of said day, did break and enter a . . . building, to-wit, a house trailer, owned by Douglas Blaisdell, . . . where valuable things were then and there kept, and therein did, with intent to permanently deprive . . . Douglas Blaisdell, of his property, steal, take and carry away one RCA tape recorder, . . . one H&R .22 caliber revolver, . . ., with holster, one Ithaca pump shotgun, . . ., one Remington .30–06 caliber pump rifle, . . . all the property of the said Douglas Blaisdell."

At the trial, the State put in evidence through the testimony of a State Police officer, Alfred Hendsbee, the serial numbers, as recorded by Hendsbee, of a .16 gauge

---

1. 17 M.R.S.A. § 2103 delineates the crime of "breaking, entering and larceny", as here pertinent, in the following language:
    "Whoever . . . breaks and enters any . . . house trailer . . . or other building . . . in which valuable things are kept, and commits larceny therein, shall be punished . . . when the offense is committed in the daytime, by a fine of not more than $1,000 or by imprisonment for not more than 6 years."

Ithaca pump shotgun, a Remington pump .30–06 rifle and an RCA tape player. Hendsbee had come upon these items in an automobile which, as shown by other evidence, had been operated by defendant in the vicinity of the Blaisdell trailer shortly after the break and entry into it. At the time, trooper Hendsbee did not know of events at the Blaisdell trailer and, hence, did not know, as was the fact, that in the break a .16 gauge pump shotgun, Remington pump .30–06 rifle and RCA tape player had been taken.

By appropriate pre-trial proceedings defendant had sought to suppress for use as evidence at trial the serial numbers of the shotgun, rifle and tape player. The grounds asserted for suppression were that (1) trooper Hendsbee had initially perceived the serial numbers through a detention of defendant and a handling of the articles which, in all the circumstances, amounted to an unconstitutional "seizure" of defendant's person and also of the chattels, and (2) even if the officer's original perception of the serial numbers was lawful, Hendsbee would not be giving testimony of his independent memory of the serial numbers but would be offering a recollection based on his record of them as made in circumstances rendering the record an unconstitutional "seizure" of the serial numbers.

◼ The Justice presiding at the suppression proceedings refused to suppress the use of the serial numbers as evidence. At trial, the Justice presiding admitted in evidence Hendsbee's testimony as to the serial numbers recorded by him. The Justice's reasoning was that no new circumstances had been shown at trial bearing on the suppression issue and, hence, the "law of the trial" was established by the pre-trial ruling denying suppression. This was a correct approach. *State v. Hazelton*, Me., 330 A.2d 919 (1975).

In his appeal from the judgment of conviction defendant makes a single claim:—

the admission in evidence of the record of the serial numbers of the shotgun, rifle and tape player was reversible error.

We find defendant's contention without merit and deny the appeal.

*1.*

We address, first, that alternative aspect of defendant's overall claim which asserts that trooper Hendsbee initially perceived the serial numbers by virtue of an unconstitutional detention of the person of defendant and an unconstitutional seizure of the chattels bearing the serial numbers.

The Justice presiding at the suppression hearing was warranted in finding the following factual situation.

At approximately 2:00 p. m. on May 2, 1974, Deputy Sheriff Charles Hopper (also a fire inspector) became specially interested in a Mercury automobile because it was being driven at a speed at least twenty miles below the authorized speed limit. As he was looking at the vehicle, deputy Hopper saw a passenger in the vehicle toss a bottle, which appeared to be a beer bottle, out of the window. Hopper also noticed that the operator of the vehicle, who it eventuated was the defendant, was continuingly glancing in the rear view mirror. Hopper then decided to follow the car and observe the conduct of its occupants. He did so for about twenty minutes, at which time the Mercury made an abrupt turn, without signalling, and then speeded up. At this point, suspecting from the unusual manner in which the vehicle was being operated and from the throwing of the bottle that the occupants might be intoxicated, Hopper decided to stop the vehicle. Simultaneously, he took the precaution to send a radio communication to the State Police.

Hopper turned on his blue light and placed it on the dashboard of his vehicle. Almost immediately, defendant pulled over and stopped. As defendant's vehicle was

coming to a halt, Hopper saw the passenger place something underneath the seat.

Immediately after stopping, defendant emerged from his vehicle and walked directly over to Hopper's automobile. Without being requested to do so, defendant produced for Hopper's inspection an Oklahoma operator's license. Hopper asked defendant if he had been drinking and defendant replied in the negative.

Hopper then walked over to the defendant's automobile to observe the passenger who had remained seated in the car and to see what he had placed under the seat as the car was pulling over. Hopper observed a coin bank, in the shape of a squirrel, approximately ten inches in height, standing on the floor of the vehicle. The passenger's legs were extended over the bank. As Hopper turned to return to his own vehicle, he noticed on the back seat two gun cases and a stereo tape deck.

Hopper returned to his vehicle, told defendant to wait a moment, and radioed trooper Hendsbee (the officer with whom he had previously spoken) to ascertain his whereabouts. While the conversation was still going on, trooper Hendsbee and another State police officer arrived at the scene. Deputy Hopper handed defendant's Oklahoma operator's license to Hendsbee, identified the automobile from which defendant had emerged as the vehicle he had been following and told trooper Hendsbee to look inside it.

Trooper Hendsbee noted that the operator's license was in the name of "Edward L. Fitzherbert" and then handed it over to the other State officer. Hendsbee thereupon proceeded to the Mercury automobile. From a vantage point outside the vehicle trooper Hendsbee saw on the back seat of the car the same items observed by deputy Hopper. Hendsbee further noted the name

"Roxanne" written on a label in a tape protruding from the tape player. In response to inquiries by Hendsbee defendant told Hendsbee that he was the owner of the gun cases and they contained unloaded rifles. Hendsbee asked defendant for permission to check to see whether the rifles were in fact unloaded, and defendant said: "Go ahead." Defendant himself then removed one of the weapons and Hendsbee removed the other. In the process of examining the guns, Hendsbee observed the serial numbers. He thereupon wrote them on the back of a card and also read them aloud to the other State officer. The other officer proceeded to check the serial numbers with the National Crime Information Center (NCIC), with negative results. Hendsbee returned the guns to defendant but retained the record he had made of their serial numbers.

Subsequently, and entirely on his own initiative, Hendsbee entered the Mercury automobile and proceeded to examine the RCA tape player on the back seat. He copied its serial number. A check of the number with the NCIC showed nothing.

We find from these circumstances that both deputy Hopper and trooper Hendsbee became aware of the presence of the gun cases, tape player and coin bank without infringing upon defendant's constitutional rights under the federal Fourth-Fourteenth Amendments.

Hopper was justified in stopping the vehicle because of his reasonable suspicion that its occupants were involved in violation of laws relating to intoxicating liquors.[2] State v. Babcock, Me., 361 A.2d 911 (1976); cf. United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L. Ed.2d 607 (1975). While the automobile was stopping and immediately after the stop, the occupants of the automobile en-

2. At the time of the stop, May 2, 1974, both the driver and the passenger could have been guilty of crimes: (1) operating a motor vehicle under the influence of alcohol—29 M.R.S.A. § 1312, and (2) being intoxicated in a motor vehicle on the highway—17 M.R. S.A. § 2001. 17 M.R.S.A. § 2001 was repealed effective July 1, 1974.

gaged in further conduct as a result of which it became reasonable for Hopper to suspect that they were attempting to conceal property. Notwithstanding that Hopper ascertained that the operator was not intoxicated, it remained reasonable for him to continue briefly to detain the automobile and its occupants to undertake a further limited investigation to ascertain whether the passenger was intoxicated and to explore, without searching, the significance of the furtive conduct respecting property. *State v. Babcock*, supra; cf: *United States v. Brignoni-Ponce*, supra. It was during the course of this brief and limited investigation that Hopper observed in plain view the bank, gun cases and tape recorder. It then became reasonable for Hopper to detain defendant for a further brief period while he reported his observations to the State Police and asked them to check whether any of the articles in the automobile had been reported stolen. As this report was being made, trooper Hendsbee arrived at the scene, and his glance at the interior of the automobile, made at Hopper's request, remained a reasonable incident of Hopper's originally undertaken investigation. Hendsbee then saw in plain view (and thus without need to search) the same articles Hopper had seen.

■ Hendsbee's acquisition, subsequent to his glance into the automobile, of the additional knowledge that the gun cases contained an Ithaca pump shotgun and a .30–06 caliber rifle was also achieved without violation of defendant's rights under the Fourth-Fourteenth Amendments to the Constitution of the United States. Defendant had consented to Hendsbee's search of the gun cases. That, prior to obtaining such consent, Hendsbee had not informed defendant that he had a right to withhold consent is of no legal consequence. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) has settled that a consent in fact given to a search is not vitiated in legal contemplation by the omission of the officer to inform the person giving the consent of his constitutional prerogative to refuse to consent. It was in the course of this lawful consent search that Hendsbee observed that the gun cases contained, respectively, an Ithaca pump shotgun and a Remington .30–06 caliber pump rifle.

*2.*

It being thus established that, lawfully, trooper Hendsbee had come to know that inside the Mercury automobile were an Ithica pump shotgun and a Remington .30–06 caliber pump rifle (as observed from a consent search) and an RCA tape player and a coin bank approximately ten inches high (as observed in plain view), we need not decide the alternative facet of defendant's claim on appeal:—whether, having lawfully acquired such knowledge, trooper Hendsbee violated defendant's constitutional rights by his subsequent conduct of "seizing", by recording (without consent), the serial numbers of the shotgun, rifle and tape player.

■ Even if we assume, without deciding, that this "seizure" was unconstitutional, we conclude that any error in the admission in evidence of the hypothesized unconstitutionally seized serial numbers was, in any event, in light of the totality of the evidence, harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Defendant's guilt was established by overwhelmingly convincing evidence independent of the serial numbers. In addition to the testimony of the owner of the trailer Douglas Blaisdell, and of his wife, Roxanne, which abundantly proved the corpus delicti of the crime, there was in evidence a detailed confession by the defendant, and this confession was not a product of officer Hendsbee's knowledge, or recording, of

the serial numbers of the rifle, shotgun and tape player.[3]

The entry is:

*Appeal denied.*

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.

POMEROY, J., did not sit.

All Justices concurring.

3. Thus, the confession could not reasonably be claimed to bear any taint from the hypothesized unconstitutionality of Hendsbee's "seizure" (by recording) of the serial numbers of these articles.

Defendant had given his confession in the following circumstances. After his investigative confrontation with defendant and the negative results of the checks with NCIC, trooper Hendsbee had allowed defendant to depart. Subsequently, Hendsbee learned from a radio report, deriving from information made available to the police by Mr. Blaisdell, that there had been a break into Mr. Blaisdell's trailer during which there had been taken a coin bank, an RCA tape player, an Ithica pump shotgun and a Remington .30–06 caliber pump rifle. The radio report mentioned nothing about serial numbers. Without resort to use of the serial numbers he had recorded and strictly from the remarkable resemblance between the nature of the items described by Blaisdell and the articles that Hendsbee lawfully had come to know were in the Mercury operated by defendant, Hendsbee informed the police of defendant's identity. As a result of this identification, Lewiston police officers made the contact with defendant during the course of which defendant freely gave his confession.