2000 ME 117

**STATE of Maine**

v.

**Barbara M. KREMEN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.
Decided June 21, 2000.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Gregory Campbell, Asst. Dist. Atty., Portland, for State.

Stephen J. Schwartz, Schwartz & Schwartz, P.A., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Barbara Kremen appeals from a judgment of the Superior Court (Penobscot County, *Marden, J.*) affirming a judgment entered in the District Court (Newport, *MacMichael, J.*) following a finding that she violated the provisions of 22 M.R.S.A. § 2383 (1992)[1] by possessing a useable amount of marijuana.[2] Kremen contends that the court erred in denying her motion to suppress evidence, and challenges the sufficiency of the evidence at trial. We find no error and affirm the judgment.

[¶ 2] On August 15, 1997, Kremen, while en route to a Phish concert in Aroostook County, was stopped for speeding in the Town of Newport by Officer Peter Boucher. Boucher issued a citation for speeding and asked Kremen if there was anything illegal in the vehicle. The officer also asked if she minded if he searched the car. Kremen testified that she did not give such permission, but according to the officer, Kremen readily agreed to his request to search her car. The officer discovered a small bag of marijuana in the glove compartment and a pipe containing marijuana in the vehicle's center console. He then cited Kremen for possession of a useable amount of marijuana.

[¶ 3] Kremen's motion to suppress the marijuana evidence was denied following a hearing.[3] The court (*Hjelm, J.*) found that the initial stop of Kremen's vehicle was proper and that Kremen had voluntarily consented to the subsequent search of the vehicle. The court also concluded that the scope of Kremen's consent allowed Boucher to search the glove compartment and console, and that the marijuana that was found provided probable cause to search the rest of the vehicle.

[¶ 4] By the time of Kremen's bench trial in July of 1998, the marijuana and the pipe could not be found. Boucher testified that although the marijuana that he seized had not been tested, he had been trained in the identification of marijuana, and that the substance he had taken from the glove compartment appeared to be and smelled like marijuana. Kremen was found to have possessed a useable amount of marijuana (*MacMichael, J.*). This appeal fol-

---

1. 22 M.R.S.A. § 2383 provides, in relevant part:

    § 2383. **Possession**
        1. **Marijuana.** Possession of a usable amount of marijuana is a civil violation for which a forfeiture of not less than $200 nor more than $400 shall be adjudged for the first offense. A forfeiture of $400 shall be adjudged for the 2nd and subsequent offenses within a 6-year period.

2. Kremen was assessed a fine of $229.00.

3. Kremen was initially defaulted for failure to appear in the District Court. The default was set aside following Kremen's motion for relief from judgment filed pursuant to M.R. Civ. P. 60(b). Kremen then filed a motion to suppress.

lowed Kremen's unsuccessful appeal to the Superior Court.

## I.

■ [¶ 5] Kremen first contends that the suppression court abused its discretion when it allowed Officer Boucher to testify that he stopped Kremen for speeding based on his observation of his radar equipment. She contends that he was not certified to operate the radar, making the stop of Kremen's car for speeding unjustified. Kremen did not object to Boucher's testimony at the suppression hearing on the ground that his certification to operate radar had expired. Rather she argued to the court that the testimony should be given little weight. Thus the issue of the admissibility of that testimony has not been preserved. Moreover, because the court has to find only that the officer had an articulable suspicion that criminal conduct or a civil violation has occurred, *see State v. Brown*, 1997 ME 90, ¶ 5, 694 A.2d 453, 455, the expiration of the officer's previously valid certification would likely have little impact on the court's determination of whether that standard had been met.

[¶ 6] Kremen also contends that the court erred in its finding that she had consented to the search. First, she argues that Boucher could not ask for her consent to search the vehicle unless he had an articulable suspicion that it contained contraband. Second, she contends that the court erred when it found she had given "knowledgeable consent." [4] The State contends that Boucher's request to search the vehicle was proper because it came during the lawful stop for speeding.

■ [¶ 7] We review a finding that voluntary consent was given for clear error. *See State v. Seamen's Club*, 1997 ME 70, ¶ 7, 691 A.2d 1248, 1251 (citing *State v. Marden*, 673 A.2d 1304, 1310 (Me.1996); *State v. Cress*, 576 A.2d 1366, 1367 (Me. 1990)).

It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable ... subject only to a few specifically established and well-delineated exceptions. It is equally well settled that one of the specifically established exceptions to the requirements of *both a warrant and probable cause* is a search that is conducted pursuant to consent.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quotations and citations omitted) (emphasis added). Any consent obtained during an invalid seizure, however, is ineffective. *See Dunaway v. New York*, 442 U.S. 200, 217–18, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (discussing the extent of the Fourth Amendment's exclusionary rule).

■ [¶ 8] The evidence before the court on the motion to suppress shows that Boucher's request to search Kremen's vehicle occurred while she was stopped for the speeding violation. Consent obtained during this stop is not unlawful under *Dunaway* unless there was no articulable suspicion to stop Kremen for the speeding violation. Here, there was articulable suspicion that Kremen was speeding.

■ [¶ 9] Relying on *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), Kremen also argues that Boucher's request for permission to search the vehicle was not " 'reasonably related in scope to the justification for [its] initiation.' " *Id.* at 881, 95 S.Ct. 2574 (quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The Court in *Brignoni–Ponce*, however, stated that "[t]he officer may question the driver and passengers [regarding the potential illegal activity],[5] and he may ask them to explain suspicious circumstances, *but any further detention or search must be based on consent or probable cause.*" *Brignoni–*

---

4. Kremen also argues, and the State concedes, that the search was proper only if Kremen consented to it.

5. The defendants in *Brignoni–Ponce* were suspected of being illegal aliens. *See id.* at 881, 95 S.Ct. 2574.

*Ponce,* 422 U.S. at 881–82, 95 S.Ct. 2574 (emphasis added). Thus, although *Brignoni–Ponce* holds that investigatory questions must be limited to the justification for the stop, it does not follow that a simple request for permission to search a vehicle, without more, is a Fourth Amendment violation. Moreover, the Supreme Court explicitly noted that consent allows further investigation beyond the initial justification. *See id.* at 882, 95 S.Ct. 2574. It follows, then, that an officer is allowed to *ask* for that consent.

[¶ 10] We have held that, to be valid, consent must be voluntary and given "by one 'with an appropriate relationship to the property searched.'" *State v. Sherburne,* 571 A.2d 1181, 1185 (Me.1990) (quoting *State v. McLain,* 367 A.2d 213, 217 (Me.1976)). In addition, a search made pursuant to consent is limited to the bounds of that consent. *See Sherburne,* 571 A.2d at 1185 (citing *State v. Koucoules,* 343 A.2d 860, 867 (Me.1974)).

[¶ 11] Boucher's testimony at the suppression hearing is sufficient to support findings that his request for permission was made during a valid stop for speeding, and that Kremen voluntarily consented to the search of her vehicle. The District Court, on the motion to suppress, found each of these elements. Accordingly, the court did not err when it denied Kremen's motion to suppress.

## II.

[¶ 12] Kremen contends that there was insufficient evidence to support a finding that she was in possession of the alleged marijuana taken from her vehicle. She also argues that the substance destroyed was potentially exculpatory evidence, and that the evidence was insufficient to support a finding that the substance taken was, in fact, marijuana

[¶ 13] In a review of an adjudication of a civil violation, we view the evidence in a light most favorable to the State, to determine whether evidence supports a finding, by a preponderance of the evidence, that the State has established every element of the violation. *See* M.R. Civ. P. 80H(h). "When the Superior Court acts as an intermediate appellate court, we review the decision of the trial court directly." *Emerson,* 675 A.2d at 979 (citing *Noyes v. Noyes,* 617 A.2d 1036, 1037 (Me. 1992)).

[¶ 14] Possession may be either actual or constructive. Here, the State concedes that Kremen was not in actual possession of the marijuana. We have discussed what is required to prove constructive possession. *See State v. Ketchum,* 1997 ME 93, ¶ 13, 694 A.2d 916, 918–19. "Constructive possession means that although one does not have actual physical control of the goods, he has dominion, authority or control over them," (*State v. DePhilippo,* 628 A.2d 1057, 1060 (Me.1993)) (quoting *State v. Durgan,* 467 A.2d 165, 167 (Me.1983)). We have upheld a finding of constructive possession when stolen goods were found in a vehicle that defendant "both owned and occupied," *see DePhilippo,* 628 A.2d at 1060, when stolen goods were found in a vehicle the defendant used as his home and was driving at the time of the stop, *see State v. Mower,* 407 A.2d 729, 733 (Me.1979), and when stolen goods were found on premises where the defendant resided, *see State v. Robinson,* 561 A.2d 492, 495 (Me.1989).

[¶ 15] As to the destruction of the marijuana, we have described the consequences of a failure to preserve evidence as follows:

> The State's failure to preserve evidence does not violate a criminal defendant's right to a fair trial unless (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, (2) the defendant would be unable to obtain evidence of comparable value by other reasonably available means, and (3) the State acted in bad faith in failing to preserve potentially useful evidence.

*State v. Cyr,* 588 A.2d 753, 755 n. 4 (1991) (citing *State v. Lewis,* 584 A.2d 622, 625 (Me.1990)). All three elements must be present in order for Kremen's right to a fair trial to be found to have been violated.

[¶ 16] Here, the testimony supports a finding that Kremen was driving a vehicle in which marijuana was found both in the glove compartment and in the center console. That Kremen was in constructive possession of marijuana may be inferred under our prior holdings. Also, contrary to Kremen's contentions, it was not "apparent before the evidence was destroyed" that the alleged marijuana possessed exculpatory value, nor does it appear that the evidence was destroyed in bad faith. Accordingly, her right to a fair trial was not violated. Finally, Boucher testified that he had been trained to identify marijuana, and that he had identified the substance as marijuana. The court was entitled to rely on this testimony to find that it was in fact marijuana. Thus, the court did not err when it determined that the elements of the violation had been proven by a preponderance of the evidence.

The entry is:

Judgment affirmed.

CALKINS, J., with whom SAUFLEY, J., joins, concurring.

[¶ 17] I write separately to indicate that I concur in the portion of the decision concerning the consent to search because our prior decisions hold that we assume that the suppression judge found all facts necessary to the grant or denial of a suppression motion in the absence of a request for findings. *See State v. Izzo,* 623 A.2d 1277, 1280–81 (Me.1993) (upholding denial of suppression motion and stating that appellant has the burden to request that court expand on findings; in the absence of such a request, we assume the suppression court found all facts necessary to support its ruling); *State v. Powell,* 591 A.2d 1306, 1308 n. 4 (Me.1991) (upholding suppression order and noting that because State failed to request findings, we assume that suppression court found all necessary facts to support grant of motion). Given that Kremen did not request additional findings, pursuant to M.R.Crim. P. 41A(d), we assume that the court found the historical facts necessary for its denial of the motion.

[¶ 18] I agree with the dissent that if Kremen was unlawfully detained at the time she was asked for permission to search, her consent would be invalid. I cannot conclude from the facts contained in the court's written findings that Kremen's detention at that time was illegal as a matter of law.[6] *See State v. Rizzo,* 1997 ME 215, ¶ 11, 704 A.2d 339, 342–43 (stating that we review independently legal conclusions based on the historical facts found by the trial court). Likewise, if the court had found facts indicating that Kremen was in custody to a degree associated with arrest, her consent would be invalid if she had not been given *Miranda* warnings and waived the *Miranda* rights, and if the court had found her consent was not voluntarily given, the search results would have to be suppressed.

[¶ 19] The suppression court did not explicitly make findings concerning the legality of the detention once the speeding tick-

6. The court's only findings regarding the detention are as follows:

After some initial conversation between [the officer] and the Defendant, the officer asked her to accompany him to the police cruiser, and she did so. During the ensuing conversation, the Defendant advised [the officer] that she was driving to a rock concert in Aroostook County. While they were in the cruiser, [the officer] asked her if there was "anything illegal" in the vehicle. The Defendant responded in the negative. [The officer] then asked the Defendant if he could search the "front compartment area" of the vehicle. The Defendant consented to this.

et was given; it did not make findings concerning custody; nor did it find that Kremen's consent was voluntary.[7] Because no further findings were requested by Kremen, and because we have repeatedly held that we assume that the court found all facts necessary to its decision when there is no request for findings, I concur that the trial court did not err in denying the motion to suppress.

ALEXANDER, J., dissenting.

[¶ 20] I respectfully dissent. This case presents a fact pattern that suggests an involuntary, compelled "consent" search of an individual who had been seized for a traffic stop and from whom a verbal consent to search may have been extracted as the price of her freedom to leave. As such, the circumstances surrounding the individual's seizure and subsequent verbal consent must be subject to careful Fourth and Fifth Amendment analysis and concurrent analysis under Article 1, sections 5[8] and 6[9] of the Maine Constitution. The trial court did not make factual findings critical to proper analysis of the issues incident to application of each of these important constitutional rights.

[¶ 21] This case involves no casual roadside encounter over a minor traffic stop followed by a relaxed consent to search with the unanticipated discovery of marijuana secreted in the vehicle. Instead, the record suggests what has come to be recognized as a widespread practice of using apparently legitimate traffic stops to extract "consent" to vehicle searches from individuals who fit profiles of persons whom police believe might possess drugs, but who engage in no conduct to give any legal basis to search the individual or the vehicle. This practice has been subject to widespread scholarly comment and criticism. *See* Angela J. Davis, *Race, Cops, and Traffic Stops*, 51 U. MIAMI L. REV. 425 (1997); Chris K. Visser, *Without A Warrant, Probable Cause or Reasonable Suspicion: Is There Any Meaning to the Fourth Amendment While Driving a Car?*, 35 HOUS. L. REV. 1683 (1999); Comment, *Pretextual Traffic Stops: Protecting Our Streets or Racist Police Tactics?* 23 U. DAYTON L. REV. 313 (1998); David Rudovsky, *The Impact of the War on Drugs on Procedural Fairness and Racial Equality*, 1994 U. CHI. LEGAL F. 237.

[¶ 22] In the principal United States Supreme Court case addressing a consent extracted after a traffic stop, the searching officer had requested consent to search in 786 traffic stops in just the year of the defendant's arrest. *See Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring). The concurring opinion noted that Ohio courts "observed that traffic stops in the State were regularly giving way to contraband searches, characterized as consensual, even when officers had no reason to suspect illegal activity." *Id.* Similarly, one of the nation's primary authorities on search and seizure has observed that "[i]n an incredible number of drug cases, the encounter with the police commenced with a seemingly innocuous traffic violation." *See* Wayne R. LaFave, *The Present and Fu-*

---

7. Although the suppression court did not find voluntariness explicitly, it discussed the voluntariness issue in a footnote in its written decision. Thus, it would be difficult to conclude that the court did not implicitly find voluntariness.

8. Article 1, section 5 states:
   **5. Unreasonable searches prohibited**
   Section 5. The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation. Me. Const. art. 1, § 5.

9. Article 1, section 6 states, in pertinent part: "The accused shall not be compelled to furnish or give evidence against himself or herself, nor be deprived of life, liberty, property or privileges, but by judgment of that person's peers or the law of the land." Me. Const. art. 1, § 6.

*ture Fourth Amendment,* 1995 U. ILL. L. REV. 111, 118.

[¶ 23] While this law enforcement practice has been most frequently analyzed in connection with racially motivated traffic stops and compelled consents to search,[10] the legal principles apply equally here where a young woman was on her way to a concert where widespread drug use was anticipated. The facts of this case and the proper approach for the Court in reviewing the motion to suppress must be analyzed from this perspective, as reflective of a common tactic to force and then justify a search without reasonable articulable suspicion, exigent circumstances, or safety concerns that are the usual bases for a warrantless seizure and search.

## I. THE FACTS OF THE STOP

[¶ 24] Barbara Kremen was stopped for speeding shortly after noon on August 15, 1997. The stop was only for speeding. The officer saw no erratic operation or other suspicious activity in the vehicle. The record indicates no issue that would have given the officer any reason to require the vehicle's occupants to leave the vehicle due to concerns regarding the officer's safety or the occupants' safety. However, the officer did not engage in the common practice of leaving the driver in the vehicle while he returned to his vehicle to check license status and write a ticket. Instead, he ordered Ms. Kremen to exit her vehicle and accompany him back to the front seat of his vehicle. The officer then finished all of the paperwork incident to the traffic stop and issued the speeding ticket to Ms. Kremen. The transaction regarding the traffic stop was completed. However, the officer *did not release* Ms. Kremen from his vehicle and tell her she was free to go.

Instead, he began questioning her as to whether there might be anything illegal in her vehicle. At this point, the testimony presented by Ms. Kremen and the officer diverge. Ms. Kremen testified that the officer threatened to jail her if she did not give consent to search. The officer testified that Ms. Kremen's consent to search was entirely voluntary. Ms. Kremen also testified that she specifically objected to a search of the front compartment of her vehicle, although the officer testified that the search of the front compartment was consented to. To challenge the officer's credibility, the defense presented evidence that the officer had plead guilty to four counts of crimes involving dishonesty—illegally tagging deer—in 1992. The search of the front compartment of the vehicle yielded the marijuana and marijuana pipe which led to the possession of marijuana charge.

[¶ 25] In its order denying the motion to suppress, the District Court indicated that it believed the officer's testimony over Ms. Kremen's testimony on the question of whether the officer had threatened to jail Ms. Kremen in order to extract her consent to search. The court did not proceed to examine the other circumstances of the stop and detention of Ms. Kremen to determine if, in the totality of those circumstances, her continued detention was justified and her consent to search was voluntary. Likewise, it does not appear that the trial court analyzed whether the statement authorizing the search of the vehicle should have been subject to *Miranda*[11] warnings. The court's findings on the consent issue consisted of: (1) a finding that the officer asked if he could search the "front compartment area"; (2)

10. In addition to the cited law review articles and notes, see *Illinois v. Wardlow*, 528 U.S. ——, 120 S.Ct. 673, 682 n. 10, 145 L.Ed.2d 570 (2000) (Stevens, J., dissenting).

11. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In a footnote, the trial court declined to apply the Fifth Amendment and Article 1, section 6

analysis to Ms. Kremen's statement consenting to the search. The defense raised the voluntariness of Ms. Kremen's statement as an issue and had apparently urged that the court apply the Fifth Amendment, beyond a reasonable doubt standard for voluntariness determinations.

a conclusion that "the Defendant consented to this"; (3) a footnote rejecting Ms. Kremen's contention that her consent was not voluntary because she was threatened with jail if she did not consent; and (4) a discussion of the appropriate scope of the search.

## II. DISCUSSION

[¶ 26] Three issues important to determination of the validity of the search of Ms. Kremen's vehicle require that her conviction be vacated and that the evidence be suppressed, or the matter be remanded for further factfinding. Those issues are:

1. Whether Ms. Kremen was subject to an illegal seizure at the time of her consent;

2. Whether Ms. Kremen's statement should have been subject to *Miranda* warnings; and

3. Whether Ms. Kremen's consent was voluntary.

### A. Seizure

[¶ 27] When a police officer stops a car, a seizure occurs for purposes of Fourth and Fourteenth Amendment analysis. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Once the traffic stop is accomplished, the seizure of the individual continues until such time

as the individual is told she is free to leave. As the United States Supreme Court has noted, "certainly few motorists would feel free to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so." *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Although the United States Supreme Court has held that an officer attempting to extract a consent to search after a traffic stop need not affirmatively advise an individual that they are free to leave and need not consent to a search, *see Ohio v. Robinette*, 519 U.S. at 39–40, 117 S.Ct. 417,[12] its opinion did not analyze the affects of a continuing seizure of the individual on other constitutional limitations on seizures and statements made in the course of a seizure.[13]

[¶ 28] Key facts in *Robinette* are close to the facts here. In both, the effort to obtain consent for a vehicle search began after the entire transaction relevant to the traffic stop had been completed. The Ohio Supreme Court had ruled that continued detention, unrelated to the original purpose of the stop, and without separate reasonable articulable suspicion, constituted an illegal seizure. *See State v. Robinette*, 73 Ohio St.3d 650, 653 N.E.2d 695, 697–98 (1995). The United States Supreme Court did not directly address this issue. Instead, it shifted the analysis to a

---

12. We have ruled similarly that a subject need not be advised (or aware) of their right to object to a consent search in order for the consent to be voluntary. *See State v. Fredette*, 411 A.2d 65, 69 (Me.1979); *State v. Fitzherbert*, 361 A.2d 916, 920 (Me.1976). The defendants in these cases were not viewed as being subject to a custodial interrogation when their consents to search were given. Thus, no independent duty to advise them of their rights arose from a custodial interrogation.

13. Analyzing the *Robinette* opinion, one law review article commented, "Oddly, the Court did not address the question of whether Mr. Robinette was 'seized' when the deputy asked for consent to search. If the Court had ruled on this point, it appears that, based on early Court decisions, the consent should have been ruled invalid as a product of an illegal sei-

zure." Visser, *Without a Warrant*, 35 Hous. L. Rev. at 1719 (citing a plurality opinion in *Florida v. Royer*, 460 U.S. 491, 507–08, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) holding that a "consent" to search luggage by a person illegally detained was "tainted by the illegality and was ineffective to justify the search"). In its most recent Fourth Amendment case where the facts indicated consent, the Court held that an officer's physical manipulation of a bus passenger's carry-on luggage violated the Fourth Amendment's proscription against unreasonable searches. *See Bond v. United States*, ___ U.S. ___, ___, 120 S.Ct. 1462, 1465, 146 L.Ed.2d 365 (2000). In *Bond* the officer obtained the suspect's consent to open the luggage after manipulating it, but the government did not assert consent as a basis for admitting the evidence. *See id.* 120 S.Ct. at 1463 n. 1.

discussion of the irrelevance of the subjective intent of the officer. *See Ohio v. Robinette*, 519 U.S. at 38, 117 S.Ct. 417. This may have occurred because the Ohio ruling addressed "the motivation behind a police officer's continued detention." *State v. Robinette*, 653 N.E.2d at 697.[14] There is also an important distinction in *Robinette* that the defendant was outside of the vehicles when the consent questions were asked, while here Ms. Kremen was subject to continued detention in the police car when the consent questions were asked of her.

[¶ 29] *Robinette* does not stand for the proposition that a valid traffic stop serves as a general warrant to detain and question on issues unrelated to the stop after the transaction based on the stop has been completed. Article 1, sections 5 and 6 of the Maine Constitution do not permit a valid traffic stop to become authority for continued detention and questioning on other issues, once the transaction based on the stop has been completed.[15] Under the Maine Constitution a lawful detention pursuant to a traffic stop ends when the transaction based on the traffic stop is completed, unless further issues relating to personal safety or reasonable articulable suspicion of other illegal activity are generated during the course of the traffic stop transaction.

[¶ 30] If consent to search is given during the course of an unlawful seizure of an individual, the results of the search must be suppressed as "tainted fruit." *See Dunaway v. New York*, 442 U.S. 200, 218–19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *see also Florida v. Bostick*, 501 U.S. 429, 433–34, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 501, 507–08, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). In determining if a seizure has occurred, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that [she] was not at liberty to ignore the police presence and go about [her] business." *Florida v. Bostick*, 501 U.S. at 437, 111 S.Ct. 2382 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

[¶ 31] The District Court made no finding as to whether Ms. Kremen was subject to an illegal detention at the time of her "consent." However, the facts surrounding Ms. Kremen's continued detention do not appear to be disputed in the record. She had been removed from her vehicle

---

**14.** The Ohio Supreme Court opinion stated:

> When the motivation behind a police officer's continued detention of a person stopped for a traffic violation is not related to the purpose of the original, constitutional stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure.
>
> ....
>
> Because Robinette's consent was obtained during an illegal detention, his consent is invalid unless the State proves that the consent was not the product of the illegal detention but the result of an independent act of free will. *Florida v. Royer* (1983), 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 238. The burden is on the state to prove that the consent to search was voluntarily given. *Id.* at 497,

103 S.Ct. at 1324, 75 L.Ed.2d at 236. The factors used in consideration of whether the consent is sufficiently removed from the taint of the illegal seizure include the length of time between the illegal seizure and the subsequent search, the presence of intervening circumstances, and the purpose and flagrancy of the circumstances. *United States v. Richardson* (C.A.6, 1991), 949 F.2d 851, 858.

*State v. Robinette*, 653 N.E.2d at 697–98.

**15.** *See e.g., State v. May*, 608 A.2d 772, 774 (Me.1992) (holding that police had no authority to search a defendant's wallet, found in a police cruiser, after the defendant had been validly arrested and released, such that the arrest transaction had ended); *see also State v. Garland*, 482 A.2d 139, 144 (Me.1984) (indicating that an officer cannot continue to press an investigation and detention of a person when the reason for the investigation and detention has evaporated).

and ordered to sit in the police cruiser. She had not been told she was free to leave at the time the "consent" was extracted from her. Thus, as a matter of law, her seizure or detention continued,[16] although any justification for her seizure had ended. Accordingly, at the time her "consent" was extracted, Ms. Kremen was subject to an unlawful seizure, requiring that the results of the search be suppressed.

### B. *Miranda*

[¶ 32] In this case, the facts suggest that when Ms. Kremen made whatever statement she made indicating that the officer could search her vehicle, she was still in custody because a reasonable person in her situation would not believe that she was free to leave. *See State v. Martin,* 580 A.2d 678, 681 (Me.1990).[17] Let us remember, Ms. Kremen was in the front seat of the police car where she had been told to sit by the officer. Also, she was under interrogation. "A custodial interrogation occurs whenever a defendant has been taken into custody or otherwise deprived of [her] freedom by the authorities in any significant way and is subject to questioning." *State v. McLain,* 367 A.2d 213, 220 (Me.1976).

[¶ 33] Unless we are, at this point, to develop an "automobile exception" to traditional *Miranda* requirements, Ms. Kremen, being both in custody and under interrogation, would have had the right, under the Fifth Amendment of the United States Constitution and Article 1, section 6 of the Maine Constitution, to be advised that she had the right to remain silent, that any statement she might make could be used against her, and that she had a right to consult with counsel prior to making any statements. *See Miranda v. Ari-*

*zona,* 384 U.S. at 444, 86 S.Ct. 1602; *State v. Preston,* 411 A.2d 402, 405–06 (Me.1980). No such cautions were given here. It is undisputed that the only basis for search of the vehicle was whatever statement Ms. Kremen made regarding giving of consent. Absent that statement there was no reasonable articulable suspicion, safety concern, observation of anything in plain view, or any other basis for a warrantless search. If the search was the result of an uncautioned statement while Ms. Kremen was in custody and under interrogation, the results of the search must be suppressed. *See Miranda,* 384 U.S. at 476, 86 S.Ct. 1602; *Preston,* 411 A.2d at 405.[18]

### C. Voluntariness

[¶ 34] Separately, the suppression court did not sufficiently analyze the issue of the voluntariness of Ms. Kremen's statement of consent. The court stated that it did not believe Ms. Kremen's statement that the officer had threatened to jail her if she did not consent to the search. But with that finding made, the court did not go on to further analyze, based on the totality of the circumstances, the issue of whether her statements to the officer were voluntary. Voluntariness of a "consent" to search must be analyzed under the Fourth Amendment and Article 1, section 5, "by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. at 39, 117 S.Ct. 417; *State v. Sherburne,* 571 A.2d 1181, 1185 (Me.1990). Relevant but not dispositive factors in determining if consent to a search is voluntary include "[k]nowledge of the right to refuse consent; presence of coercive surroundings, including the location of the request; and the number of police officers present . . . ." Visser, *Without a Warrant,* 35 Hous. L. Rev. at 1696.

---

16. See the discussion at ¶ 27 of this dissent.

17. *See also Berkemer v. McCarty,* 468 U.S. at 436, 104 S.Ct. 3138.

18. *See also State v. Koucoules,* 343 A.2d 860, 868 (Me.1974) (indicating, as dictum, that a

search which exceeds the bounds of a valid consent "becomes an invidious invasion of privacy rendering the search unreasonable within the meaning of the Fourth Amendment, and the fruits thereof must be suppressed").

[¶ 35] While voluntariness is not examined with the Fifth Amendment, beyond a reasonable doubt burden of proof, *see State v. Koucoules*, 343 A.2d at 872–76, the State must prove voluntariness of a consent by a preponderance of the evidence. *See id.* at 866, 872–73; *see also State v. Fredette*, 411 A.2d 65, 68 (Me.1979). Accordingly, when voluntariness of a consent is challenged, the totality of the circumstances must be examined. The State must prove and the court must find that the consent was "free and voluntary and not the product of coercion, whether express or implied." *Fredette*, 411 A.2d at 68 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

[¶ 36] Here, once the court rejected the credibility of Ms. Kremen's statement that she was threatened with arrest if she did not consent, it appears to have assumed the voluntariness of the consent and proceeded to the issue of the scope of the consent, which it also resolved against Ms. Kremen.

[¶ 37] The totality and the circumstances in this case—for search and seizure and self-incrimination analysis—includes the reality that there is a common and widespread law enforcement practice of using traffic stops to attempt to extract consent searches of vehicles where, but for the

consent, no other legal basis for the search exists. This practice relies on compulsion and the compromise of freedom resulting from the traffic stop and the implicit, sometimes explicit, threat of further impediment or delay to obtain a consent to search.[19] The circumstances here also include interrogation in the arguably coercive surroundings of the police car in which Ms. Kremen had been ordered to sit. *See Preston*, 411 A.2d at 405 (observing that police "increased the coercive nature of the interrogation by conducting it in the police car"); *see also State v. Thibodeau*, 496 A.2d 635, 639–40 (Me.1985).

[¶ 38] A person acts voluntarily to provide testimonial self-condemnation of a crime or, here, a consent to search, only if that person chooses "freely and knowingly, to provide criminal self-condemnation by utterances from [her] own lips." *State v. Collins*, 297 A.2d 620, 626 (Me.1972). Notably, *Koucoules*, while refusing to apply *Collins's* beyond a reasonable doubt burden of proof to the voluntariness of consent analysis, did appear to accept a similar definitional analysis of voluntariness, using terms requiring consent to be "knowledgeable" and "intelligent" and not a product of "duress" or "coercion," "express or implied." *Koucoules*, 343 A.2d at 872–76.[20]

---

19. Finding "consent" to search voluntary in drug seizure cases requires an interesting circuity of reasoning. To convict a person of possession of the drugs found, the court must find, beyond a reasonable doubt, that she knew or was aware of her possession of the drugs. *See* 17–A M.R.S.A. § 103–B(3) (Supp. 1999); *see also State v. Friel*, 508 A.2d 123, 128 (Me.1986), *cert. denied*, 479 U.S. 843, 107 S.Ct. 156, 93 L.Ed.2d 96; *State v. Deering*, 1998 ME 23, ¶ 12, 706 A.2d 582, 585; Alexander, *Maine Jury Instruction Manual*, § 6–43 (Supp.2000). To find consent voluntary, the court must find that the defendant, aware of the drugs in her vehicle, consented to have it searched in the exercise of her free will and rational intellect. Thus, consent must be found despite evidence of an arguably coercive environment and a result indicating that the choice to allow the search may have been less than free or less than rational. *But see*

*Florida v. Bostick*, 501 U.S. at 437–38, 111 S.Ct. 2382 (stating that the reasonableness or rationality analysis "presupposes an innocent person").

20. *Koucoules* would not appear to permit a condition not caused by influence from the authorities to compromise voluntariness of a consent for Fourth Amendment and Article 1, section 5 analysis. *Compare State v. Rees*, 2000 ME 55, 748 A.2d 976; *State v. Caouette*, 446 A.2d 1120 (Me.1982) (holding that independently arising conditions may impair voluntariness under Article 1, section 6 analysis).

Issues of the burden of proof for voluntary consent and whether voluntariness of a consent may be impaired by an independent condition have not been thoroughly examined by us since *State v. Koucoules*. Those issues need not be addressed here.

[¶ 39] The consent here was obtained by using the common tactic of holding an individual after a traffic stop to utilize the pressures resulting from that continued holding to compromise an individual's freedom and their free will in order to obtain a consent. Without trial court findings on the point, it is difficult to conclude that Ms. Kremen's consent, given in the totality of those circumstances, was, by a preponderance of the evidence, a statement made as the result of the exercise of her own free will and not the product of duress or coercion, express or implied.

## III.  CONCLUSION

[¶ 40] I would vacate the conviction and order the evidence resulting from the search suppressed because "consent" was extracted during an improper detention of Ms. Kremen. Alternatively, I would vacate the conviction and remand for fact-finding on the voluntariness issue.