STATE OF MAINE                                          Unified Criminal Docket
CUMBERLAND, ss.                                         Docket No. CR-11-6470
                                                        WRD - CUM - 12/23/2011


IN RE SEIZURE OF PROPERTY FROM          )       ORDER ON MOTION FOR
M.A. STORCK COMPANY                     )       RETURN OF PROPERTY


     This matter came before the court in October for hearing on Jamie O'Connor's motion for return of seized property filed pursuant to Rule 41(e) of the Maine Rules of Criminal Procedure. The property in question -- gold coins -- had been seized on in early September 2011, and is still being held by the Portland Police Department. The Movant, Mr. O'Connor, appeared for hearing and was represented by Kristine C. Hanley, Esq. The Respondent, the Portland Police Department, was represented by its counsel, BethAnne Poliquin Esq. Counsel requested an opportunity to file post-hearing memoranda. The last memorandum was filed on November 2, 2011.

## I. Findings

     The court makes the following findings of fact based on stipulations of the parties at hearing.[1]

     On August 29, 2011, Jim Simmons of M.A. Storck Company in Portland purchased a number of gold coins from Jamie O'Connor. The coins consisted of twenty Liberty $20 coins, twenty St. Gaudens $20 coins, and eighty-nine English Sovereign coins. The $20 gold pieces, which contain approximately .96 ounces of gold each, are more valuable than their weight in gold because they are considered collector's items.

     Mr. Simmons agreed to purchase the entire collection for $98,105, which represents a discount of the actual value. He is a wholesaler who makes purchases at a discounted rate in order to receive a profit when the items are resold. He paid Mr. O'Connor with check #113661 drawn on M.A. Storck's account in the sum of $98,105.

     One day later, while Detective Sauschuck of the Portland Police Department was in the store looking for property stolen in an unrelated burglary, Mr. Simmons reported that he suspected that the coins he had purchased from Mr. O'Connor might be stolen. Mr. Simmons recalled that a fellow dealer named Arthur Beebe had mentioned that he had been the victim of a break-in and that some of his gold coins were missing. Based on that information, Mr. Simmons stopped payment on the check.

     The following day, August 31st, Detective Sauschuck confirmed with the Charlestown, New Hampshire Police Department that Mr. Beebe had been burglarized

---

[1] The parties stipulated to the facts set out in two documents: Movant's motion, paragraphs 1-5 and 7-12; and the Statement of Facts on pages 1-4 of Respondent's Memo in Opposition to the Return of Seized Property.

on August 26, 2011. At that time, Mr. Simmons gave Detective Sauschuck Mr. O'Connor's name and the contact information recorded on the pawn slip.

On September 1st, Detective Sauschuck learned from the Moultonborough, New Hampshire, Police Department that Mr. O'Connor had filed a fraud report regarding the stopped check and that he had already drawn approximately $40,000 against it. The Moultonborough Police Department also informed Detective Sauschuck that Mr. O'Connor had a criminal history of theft and burglary. When interviewed by Detective Kessler of the Moultonborough Police Department, Mr. O'Connor explained that he had purchased the coins twenty years ago through a friend whom he understood had ties to "the Italian Mafia."

The next day, Detective Sauschuck learned from a branch manager at Mr. O'Connor's bank that she had told him that there would be a five to ten-day hold on the $98,105 check he had deposited, and informed him that he would accordingly not have immediate access to the funds.

Having learned through her investigative efforts that it was unlikely that the gold coins Mr. O'Connor had sold to M.A. Storck Co. were the same gold coins that had been stolen from Arthur Beebe in New Hampshire, Detective Sauschuck sent a law enforcement bulletin out to police departments in New Hampshire, Massachusetts, New York and Vermont informing them of the Portland Police Department's investigation and seeking leads. That law enforcement bulletin generated several inquiries regarding ongoing theft investigations involving gold coins. Detective Sauschuck met with a Detective from the Yarmouth, Maine Police Department to discuss a burglary there in which twenty-give Liberty and twenty-five St. Gaudens coins had been reported stolen.

On or about September 6,[2] 2011, Detective Sauschuck went back to M.A. Storck to obtain the gold coins from Mr. Simmons. Mr. Simmons produced the coins and stated that he intended to return them to Mr. O'Connor. At the detective's urging, he reluctantly turned them over.

The Portland Police Department remains in possession of the coins despite the fact that no charges have been filed against Mr. O'Connor. Although the Portland Police Department continues to investigate, to date they have not identified any open robbery or theft case involving coins matching those seized from M.A. Storck.

None of the items seized are contraband.

---

[2] There is some confusion in the record as to the actual date the coins were seized. Paragraphs 5 and 7 of the motion identify the seizure date as September 2. Respondent's Memo in Opposition, which was filed prior to the hearing and also served as a basis for the parties' stipulations (see footnote 1, above) stated that September 6th was the date the coins were seized. Movant's subsequently filed memorandum also uses the September 6th date. In any event, while the four-day difference arguably may be material with respect to the issue of exigent circumstances, because the court bases its conclusion on other grounds, the actual date -- whether the 2nd or the 6th -- is immaterial.

2

## II. Conclusions

Rule 41(e) provides that "[a] person aggrieved by an unlawful seizure, when no charge has been filed, may move ... for the return of the property on the ground that it was illegally seized." M.R. Crim. P. 41(e). The rule further provides that if the motion is granted, "the court shall order that the property be restored unless otherwise subject to lawful detention." *Id.* The two questions in issue are: Were the coins "illegally seized"? If not, may the Portland Police Department retain the coins indefinitely?

### A. Seizure of the Coins

At the outset, contrary to Mr. O'Connor's contention, the court concludes that at the time the coins were seized, there was probable cause to believe that they may have been stolen. Unlike the situation in *State v. Sweatt*, 427 F.2d 940 (Me. 1981), on which Mr. O'Connor relies, here there was a sufficient nexus between the seized items and suspected criminal activity. The concern in *Sweatt* was that the search and seizure was overbroad, and that there was no probable cause to believe that the seized tourmaline had been acquired unlawfully where the only evidence supporting the detective's suspicions consisted of double hearsay by declarants of unknown credibility. *See id.* at 944. Here, on the other hand, probable cause was based on a number of factors, including Mr. Simmons' suspicions, information transmitted by New Hampshire detectives (regarding, for example, Mr. O'Connor's aggressive spending behavior before the check had cleared, his criminal history, and his explanation of how he had come to own the coins), and inquiries made in response to the law enforcement bulletin circulated by Detective Sauschuck.

It is undisputed that the coins were seized without a warrant. The parties both point to three potential exceptions to the warrant requirement that arguably apply, but disagree as to whether the requisite elements of those exceptions have been satisfied. The first exception -- based on the existence of "exigent circumstances -- applies "when there is a compelling need to conduct a search and insufficient time in which to secure a warrant." *See, e.g., State v. Bilynsky*, 2007 ME 107, ¶ 26, 923 A.2d 1169, 1174 (citation omitted). The second exception -- the "plain view" exception -- applies to evidence seized where three conditions are met: "[f]irst, the officer must not have violated the Fourth Amendment in arriving at the place in which the evidence is in plain view; [s]econd, the incriminating character of the items to be seized must be immediately apparent; [t]hird, the officer must have a lawful right of access to the items." *State v. Kennedy*, 645 A.2d 7, 8 (Me. 1994) (citations omitted). The third exception involves a situation in which a seizure was undertaken with consent. *State v. Nadeau*, 2010 ME 71, ¶ 17, 1 A.3d 445, 454 ("A search conducted pursuant to consent is one of the well-settled exceptions established exceptions to the requirements of both a warrant and probable cause") (citation omitted).

The seizure was justified under to the "plain view" exception. Detective Sauschuck had a lawful right to be present in the store, which is open to the public. Moreover, as a "closely regulated business," this particular business may have a diminished expectation of privacy in general. *See New York v. Burger*, 482 U.S. 691 (1987). The potentially incriminating character of the gold coins was "immediately apparent" because at the time of the seizure Detective Sauschuck had probable cause to believe

3

that the coins were evidence of a crime. *See Kennedy*, 645 A.2d at 8 ("immediately apparent" requirement is met "if police have probable cause to associate the discovered items with criminal activity"); *id.* at 9 ("Probable cause exists when the officers' personal knowledge of the facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the items to be seized are evidence of a crime"). Finally, Detective Sauschuck had a lawful right of access to the coins because the pawnshop owner, Mr. Simmons, agreed to retrieve them and subsequently turned them over.

The court is not persuaded by Mr. O'Connor's argument that the discovery of evidence in plain view must have been inadvertent. The Law Court interprets the search and seizure provision of Maine's Constitution in keeping with federal Fourth Amendment law, and the U.S. Supreme Court has expressly stated that inadvertency is not required. *See Horton v. California*, 496 U.S. 128, 130 (1990) ("even though inadvertence is a characteristic of most legitimate 'plain view' searches, it is not a necessary condition"); *State v. Giles*, 669 A.2d 192, 194 (Me. 1996) (noting that Maine's search and seizure law is "coextensive with federal law"). Fourth Amendment interests are adequately served so long as the item is not only in plain view, but where its incriminating character is also "immediately apparent." *See Horton*, 496 U.S. at 136. Because the "immediately apparent" element is satisfied by the existence of probable cause to associate the items to be seized with criminal activity, *see Kennedy*, 645 A.2d at 9, and because it is undisputed that Detective Sauschuck was both lawfully present in the store and had lawful access to the coins, the elements of the plain view exception have been met.[3]

Even if the plain view exception does not justify the seizure, there was consent. Mr. Simmons, owner of the store, was in possession of the coins. He voluntarily surrendered them to the detective. Although he did so "reluctantly," the facts do not establish that he was coerced. Reluctance alone does not vitiate consent, so long as the consent, as here, is given voluntarily and is not the product of coercion. *See, e.g., State v. Kremen,*, 2000 ME 117, ¶ 10, 754 A.2d 964, 968 ("to be valid, consent must be voluntary and given by one with an appropriate relationship to the property searched") (citations omitted); *State v. Cress*, 576 A.2d 1366, 1367 (Me. 1990) (affirming finding that shop owner's assistance and cooperation amounted to consent and was not mere acquiescence to lawful authority); *State v. Fredette*, 411 A.2d 65, 68 (Me. 1979) ("consent must be shown to have been free and voluntary and not the product of coercion").

The court concludes that the coins were lawfully seized.

---

[3] This conclusion is in accord with the First Circuit's reasoning in *United States v. Jones*, 187 F.3d 210, 219-20 (1st Cir. 1999) ("First, the officer must lawfully have reached the position from which he plainly could view the seized object.... Second, the seizure must satisfy the probable cause standard.... Finally, the plain view exception to the warrant requirement necessitates that the officer have a lawful right of access to the object itself") (citations omitted). With respect to the second element, the First Circuit noted that "[m]ost recent cases use the clearer 'probable cause' language, however, and at least one case criticizes the 'immediately apparent' characterization as 'an unhappy choice of words' that may 'imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the plain view doctrine.'" *Id.* at 220 n.8 (citing *Texas v. Brown*, 460 U.S. 739, 741 (1983)).

## B. Retention of the Coins

Even though the seizure of the coins was lawful, that is not the end of the inquiry. *See State v. Sweatt, supra* at 950-51. The coins are not contraband, nor have they yet been connected to any criminal activity. The burden is on the government to show some nexus between the coins and some criminal activity before the coins may be retained. *Id.* Even where such a nexus is shown, however, retention of non-contraband property may not continue indefinitely. Rather, courts have held that the government may retain non-contraband property for *a reasonable time* pending the completion of a criminal investigation. *See, e.g., Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir. 1975) (noting concern with governmental delay of "unreasonable proportions" but holding two-month delay not unreasonable); *Marger v. Bell* , 510 F. Supp. 9, 12 (D. Me. 1980) (court may order the return of property lawfully seized by the government "if the government retains the property as evidence for an unreasonable time without bringing a prosecution or if the government's retention is not reasonably related to the need asserted by the government").

The property at issue here was seized in early September 2011. At the time the coins were seized, and in light of all of the circumstances known at the time, the Portland Police Department had a reasonable basis to believe that there was a nexus between these coins and the commission of a crime. Mr. O'Connor remains a target of the investigation. The Portland Police Department states that its investigation is active and ongoing, yet has not indicated that it has any credible leads, and cannot say how long the investigation will take, when charges will be brought, or even whether charges will be brought at all. The Portland PD seeks to retain the coins for an open-ended time period—for "as long as it is engaged in the diligent pursuit of a criminal investigation and continues to develop leads."

Although retaining this property for an indefinite period of time is unreasonable, it is reasonable in these circumstances to allow the police some period of time to conclude an investigation. The question is, what is a reasonable time? Cases cited above or in the Portland PD's briefs set varying time limits depending on the circumstances in each case. In this case, in light of all the circumstances presented, the court concludes a five-month outer limit is reasonable and appropriate.[4]

---

[4] There are no definitive standards applicable. In an analogous context, Maine's Rules of Criminal Procedure set a six-month outer limit between a defendant's initial appearance and the time in which an indictment must be returned by the grand jury before the complaint is subject to dismissal. *See* M.R. Crim. P. 48(b)(2) ("If no indictment has been returned by the jury within 6 months of the initial appearance of the defendant or after the 3rd regularly scheduled session of the grand jury after the initial appearance, whichever occurs first, the clerk shall enter a dismissal of the complaint, unless within the time period specified in this paragraph the attorney for the state moves to enlarge the period and shows the court good cause why the complaint should remain on the docket"). Here the interest at stake is a property interest, and an individual's remedy is Rule 41(e). In the circumstances presented in this case, a maximum five-month retention period seems to strike an appropriate balance of competing interests.

Thus, if, as of Monday February 6, 2012, no charges have been filed against Mr. O'Connor, the coins must be returned to him pursuant to M.R. Crim. P. 41(e). If the Portland Police believe that circumstances have changed substantially such that they are able to establish a connection between these coins and a crime that has been committed, its counsel may file an appropriate motion in time to be considered prior to the February 6th deadline. In that instance the burden will be on the Portland Police Department to show a nexus between the coins and an alleged crime.

Accordingly, it is hereby **ORDERED** as follows:

1. **Mr. O'Connor's Motion is hereby DENIED to the extent that the Motion seeks the immediate return of the coins seized by the Portland Police Department from M.A. Storck Company on or about September 6, 2011;**

2. **Mr. O'Connor's Motion is hereby GRANTED to the extent that, if, as of February 6, 2012, no charges have been filed against Mr. O'Connor arising out of or relating to the coins seized, then, unless there is a further court order providing otherwise, the Portland Police Department shall immediately return said coins to Mr. O'Connor pursuant to M.R. Crim. P. 41(e).**

The clerk may incorporate this order on the docket by reference.

Dated:   December 23, 2011

_____
Wayne R. Douglas, Judge

6

STATE OF MAINE
  vs
IN RE:$20 GOLD  PIECES                           Docket No  CUMCD-CR-2011-06470

## DOCKET RECORD

Attorney: KRISTINE HANLY                    State's Attorney: BETHANNE POLIQUIN
          VINCENT KANTZ PITTMAN & THOMPSON
          44 EXCHANGE ST SUITE 301
          PORTLAND ME 04101
          RETAINED 10/05/2011

## Charge(s)

## Docket Events:

10/05/2011 FILING DOCUMENT -  FILING MOTION FILED ON 10/05/2011

10/05/2011 Party(s):  IN RE:$20 GOLD PIECES
           ATTORNEY -  RETAINED ENTERED ON 10/05/2011

           Attorney:  KRISTINE HANLY
10/07/2011 HEARING -  MOTION FOR RETURN OF PROPERTY SCHEDULED FOR 10/12/2011 at 02:00 p.m. in Room No.   7

           NOTICE  TO PARTIES/COUNSEL
10/20/2011 OTHER FILING -  MEMORANDUM OF LAW FILED ON 10/19/2011

10/26/2011 MOTION -  MOTION FOR ENLARGEMENT OF TIME FILED BY STATE ON 10/25/2011

           Attorney:  BETHANNE POLIQUIN
           ATTORNEY FOR THE CITY OF PORTLAND
10/27/2011 CASE STATUS -  CASE FILE LOCATION ON 10/27/2011

           MARIAH'S SHELF WAITING FOR MEMO
11/03/2011 OTHER FILING -  OTHER DOCUMENT FILED ON 11/02/2011

           Attorney:  BETHANNE POLIQUIN
           RESPONSE RECEIVED FROM PORTLAND PD
11/08/2011 MOTION -  MOTION FOR ENLARGEMENT OF TIME GRANTED ON 10/26/2011
           WAYNE  DOUGLAS , JUDGE
           PPD'S REPLY MEMORANDUM IS DUE 11-2-11.
11/08/2011 CASE STATUS -  CASE FILE RETURNED ON 11/02/2011

           MEMO FILED AND COPIES GIVEN TO JUDGE DOUGLAS.
12/27/2011 ORDER -  COURT ORDER ENTERED ON 12/27/2011
           WAYNE  DOUGLAS , JUDGE
           MR. O'CONNOR'S MOTION IS HEREBY DENIED. MR O'CONNOR'S MOTION IS HEREBY GRANTED TO THE
           EXTENT THAT IF AS OF 2/6/12 NO CHARGES HAVE BEEN FILED AGAINST MR O'CONNOR RELATING TO THE
           COINS SEIZED, THE PORTLAND POLICE DEPART. SHALL IMMEDIATELY RETURN SAID COINS TO MR
           O'CONNOR. THE CLERK MAY INCORPORATE THIS ORDER ON THE DOCKET BY REFERENCE.
01/05/2012 FINDING -  DENIED ENTERED BY COURT ON 12/27/2011
           WAYNE  DOUGLAS , JUDGE
           DENIED IN PART AND GRANTED IN PART. SEE ORDER

A TRUE COPY
ATTEST: _____
Clerk

IN RE:$20 GOLD  PIECES
CUMCD-CR-2011-06470
DOCKET RECORD